```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH INDOVINO and BODYLINE
COLLISION, INC.,

                Plaintiffs,

    -against-

ROBERT TASSINARI and KIM
TASSINARI                                    MEMORANDUM AND ORDER
                                             CV-05-4167(JS)(AKT)
                Defendants.

----------------------------------X
```

APPEARANCES:
For Plaintiffs:         Leo F. McGinity, Esq.
                        McGinity & McGinity, P.C.
                        100 Quentin Roosevelt Blvd.
                        Suite 401
                        Garden City, NY 11530

For Defendants:         Jerry I. Lefkowitz, Esq.
                        3000 Marcus Avenue
                        Suite 1W7
                        Lake Success, NY 11042

SEYBERT, District Judge:

## INTRODUCTION

On August 31, 2005, Plaintiffs Joseph Indovino ("Indovino") and Bodyline Collision, Inc. ("Bodyline") (collectively, "Plaintiffs") commenced the instant action against Robert and Kim Tassinari (collectively, "Defendants"), alleging, inter alia that Defendants stole $295,000.00 from them. Pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Defendants argue that Plaintiffs' claims are barred by the statute

of limitations. For the reasons explained below, Defendants' motion is DENIED.

BACKGROUND

The following facts are gleaned from the Complaint and are presumed to be true for the purpose of deciding this motion.

Indovino and Bodyline are both citizens of New York State. (Compl. ¶ 2.) Indovino resides in Nassau County, New York, and is a shareholder, officer, and director of Bodyline. (Id. ¶¶ 4-5.) Bodyline is a New York corporation with its principal place of business in Nassau County, New York. (Id. ¶ 5.) The Tassinaris are a married couple; they reside in Connecticut. (Id. ¶¶ 6-8.) Kim Tassinari is Indovino's cousin. (Id. ¶ 9.)

Some time in October 1994, Robert Tassinari falsely represented himself to Indovino as a successful securities broker. Tassinari[1] claimed that he had successfully invested the funds of numerous clients, each time gaining sizable returns. (Id.) Relying upon these representations, Indovino and Bodyline wired substantial funds to a joint bank account held by the Tassinaris. (Id. ¶¶ 10-11.) In total, Plaintiffs invested $295,000.00 between October and December of 1994.

Over the next several years, Plaintiffs repeatedly inquired about the status of their investment. (Id. ¶ 12.)

---

[1] For simplicity (and because the fraudulent conduct is only alleged to have been perpetrated by him), all references in this Order to "Tassinari" refer to Robert Tassinari.

2

Tassinari responded to their inquiries with "excuses, delays and obfuscation" and never provided Plaintiffs with any documentation concerning their investments. (Id.) Plaintiffs insist that they "gave Defendants the benefit of the doubt . . . because of their familial relationship." (Id. at 12-13.)

Finally, in response to Plaintiffs' persistent inquiries, Tassinari informed Plaintiffs that he would return their investment. On January 28, 1998, Tassinari arranged for $232,000.00 to be wired to Bodyline's account. Tassinari informed Plaintiffs that the remainder of the investment would be returned at a later date when Tassinari obtained sufficient funds to do so. (Id. ¶ 14.)

Unbeknownst to Plaintiffs, the money that was returned could not fairly be considered "their investment." Rather, Plaintiffs received funds from an account owned by an entity called The BHI Group, Inc. ("BHI") and BHI's principal, Frank Zangara ("Zangara"). (Id. ¶ 15.) BHI and Zangara appear to have been similarly situated to Plaintiffs - relying on Tassinari's promise that he could earn them substantial returns on their investment. Tassinari arranged for BHI's and Zangara's purported "investment" to be wired into Bodyline's account. (Id.)[2]

In December 2003, BHI and Zangara commenced an action in

---

[2] Tassinari appears to have orchestrated a hybrid ponzi/pyramid-type scheme.

3

the New York Supreme Court, County of Nassau, against Plaintiffs to recover the funds that they were duped into wiring to Plaintiffs' account. (Id. ¶ 16.) BHI and Zangara succeeded in the state court action and obtained a judgment against Plaintiffs in the amount of $233,895.00. The judgment was entered on June 27, 2005, and was satisfied by Plaintiffs (through a payment in the amount of $225,000.00) on August 24, 2005. (Id.)

One week later, Plaintiffs commenced the instant action against the Tassinaris seeking, inter alia, the return of their investment. Specifically Plaintiffs allege the following claims: (1) fraud, (2) contribution and (3) breach of fiduciary duty against Tassinari only; and (4) unjust enrichment, (5) monies had and received, and (6) conversion against both Defendants.

## DISCUSSION

The only issue before this Court is whether Plaintiffs' claims have been filed within the applicable limitations periods. Defendants argue that Plaintiffs' breach of contract claims lapsed in 2000 - six years after Plaintiffs deposited their investment in the Tassinaris account and Tassinari appropriated their funds. (See Defs.' Mem. of Law at 3-5); see also N.Y. C.P.L.R. § 213(2); Santranaua v. Kelly, 280 A.D.2d 536, 720 N.Y.S.2d 182 (2d Dep't 2001) ("The Statute of Limitations for a contract cause of action is six years from its accrual"). Defendants maintain that Plaintiffs' fraud claims have also lapsed because Plaintiffs were

4

defrauded more than six years ago, and any fraud should have been discovered more than two years before this action was commenced. (See Defs.' Mem. of Law at 3-5); see also N.Y. C.P.L.R. § 213(8); Siler v. Lutheran Social Services of Metropolitan N.Y., 10 A.D. 3d 646, 648, 782 N.Y.S.2d 93 (2d Dep't 2004) ("The statute of limitations for a cause of action sounding in fraud is six years from the date of the wrong, or two years from the date the fraud could reasonably have been discovered, whichever is later.")

The Court first sets forth the appropriate standard of review and then addresses the merits of Defendants' motion.

I.  STANDARD OF REVIEW

"A motion to dismiss on statute of limitations grounds is properly viewed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." Jowers v. Lakeside Family & Children's Svcs., No. 06-CV-898, 2006 WL 1676146 at *2 (S.D.N.Y. June 8, 2006) (quoting Marbi Corp. of N.Y. v. Puhekkar, 9 F. Supp. 2d 425, 426 (S.D.N.Y. 1998)). In general, a motion to dismiss pursuant to Rule 12(b)(6) should only be granted where "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the complaint. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). Courts have recognized that

this standard is heightened where a statute of limitations forms the basis of the motion. "In such an instance, the motion should not be granted unless it appears "beyond a doubt" that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief." Abercrombie v. Andrew College, No. 04-CV-7717, 2006 WL 1716857 at *13 (S.D.N.Y. June 15, 2006) (emphasis added).

In deciding a motion to dismiss, the court accepts allegations contained in the complaint as true and views all facts in a light most favorable to the non-moving party. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The district court's duty "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Ryder Energy Distribution Co. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)); see also Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support them. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991).

Generally, a plaintiff is not required to set out in detail the facts upon which he or she bases a claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

6

However, claims of fraud must be pled with particularity. See Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

II. Applicable Limitations Periods

In order to properly consider Defendants' motion it is necessary to set forth, generally, the applicable limitations periods and the appropriate accrual dates with respect to each claim. As explained above, the statute of limitations for a fraud claim is either six years, or two years from the date of discovery - whichever is later. "[A] cause of action for fraud does not accrue when the fraudulent act is committed, but rather when the plaintiff suffers a loss, i.e., 'when a plaintiff with assumed knowledge of the fraudulent wrong may assert a claim for relief.'" Asbeka Indus. v. Travelers Indemnity Co., 831 F. Supp. 74, 81 (E.D.N.Y. 1993) (quoting Cruden v. Bank of New York, 957 F.2d 961, 974 (2d Cir. 1992)).

"[B]reach of fiduciary duty claims based upon allegations of actual fraud are subject to a six year statute of limitations." Hamlet on Olde Oyster Bay Home Owners Ass'n, Inc. v. Holiday

Organization, Inc., No. 11647-04, 2006 WL 1982603, at *14 (Sup. Ct. Nassau County July 7, 2006). The six-year limitations period is subject to a "discovery rule" similar to that applied to fraud claims, and the manner of assessing the accrual of such a claim is similar to that used in assessing the accrual of a fraud claim. See Kaufmen v. Cohen, 307 A.D. 2d 113, 119-20, 760 N.Y.S.2d 157 (1st Dep't 2003); Dymm v. Cahill, 730 F. Supp. 1245, 1265 (S.D.N.Y. 1990).

Claims for contribution, unjust enrichment, and monies had and received are contractual nature. A six-year limitations period applies to each of these claims. See Blum v. Good Humor Corp., 57 A.D. 2d 911, 394 N.Y.S.2d 894 (2d Dep't 1977) ("Since the cause of action for contribution is based upon the fiction of an implied contract to ameliorate any inequity which results when a tort-feasor pays more than his share of the common liability . . . the 6-year Statute of Limitations relating to implied contract is applicable"); Helfand v. Sessler, 194 Misc. 2d 38, 40, 753 N.Y.S. 2d 300 (N.Y. Civ. Ct. N.Y. County 2002) ("The applicable statute of limitations for [a claim of unjust enrichment] is six years"); Equitable Life Assur. Soc. of U. S. v. Branch, 32 A.D.2d 959, 960, 302 N.Y.S. 2d 958 (2d Dep't 1969) (applying a six-year limitations period to a claim for monies had and received).

A cause of action for "contribution does not accrue for purposes of the statute of limitations until payment has been made

by the party seeking to recover." Sprague v. Marshall, 15 A.D. 3d 853, 789 N.Y.S.2d 570 (4th Dep't 2005); see Bay Ridge Air Rights, Inc., v. State, 44 N.Y.2d 49, 53, 375 N.E.2d 29, 404 N.Y.S.2d 73 (1978).

A cause of action for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution." Gold Pac. Bancorp v. FDIC, 273 F.2d 509, 520 (2d Cir. 2001) (quoting Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (2d Dep't 1993). In general, this refers to the time when the initial payment is made. See Onanuga v. Pfizer, Inc., 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005). A cause of action for monies had and received accrues at the same time as a claim for unjust enrichment. See id.

Finally, claims for conversion are tort claims that have a three-year statute of limitations. See Cast The Sleeping Elephant Trust v. Friends World College, 210 A.D.2d 122, 620 N.Y.S.2d 63 (1st Dep't 1994). A claim for conversion does not accrue until "the defendant does something to indicate that he proposes to ignore the owner's rights and assert his own claim to the property." Davis v. Trojer, No. 99-CV-11056, 2001 WL 1645916, *2 (S.D.N.Y. Dec. 21, 2001).

In applying the foregoing limitations periods, the Court is mindful that "a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Cerbone v. Int'l

9

Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (quoting Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 113 (D. Conn. 1978)). This rule is commonly known as equitable tolling. Equitable tolling applies where a plaintiff was blamelessly ignorant of his claim or there was "culpable action by the defendant" that concealed plaintiff's claim. Johnson v. Nyack Hosp., 891 F. Supp. 155, 165 (S.D.N.Y. 1995)). Where a defendant's fraudulent concealment gives rise to equitable tolling, the statute of limitations is tolled until "the plaintiff either acquires actual knowledge of the facts that comprise his action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." City of Detroit v. Grinnel Corp., 495 F.2d 448, 461 (2d Cir. 1974). Equitable tolling "is not strictly limited to fraud claims or to claims whose limitations period runs from discovery . . . it conceptually applies to . . . contract claims as well." Glynwill Investments, N.V. v. Prudential Securities, Inc., No. 92-CV-9267, 1995 WL 362500, at *4 (S.D.N.Y. Jun. 16, 1995); see also Cestaro v. Mackell, 429 F. Supp. 465, 469 (E.D.N.Y. 1977), aff'd without opinion, 573 F.2d 1228 (2d Cir. 1977).

III. Application To Plaintiff's Claims

Applying the foregoing standards, the Court finds, at this time, no basis to dismiss any of Plaintiff's claims as untimely.

A. Fraud And Breach Of Fiduciary Duty

Even assuming that Plaintiffs' claims for fraud and breach of fiduciary duty accrued in 1994 (at the time of the initial investment),[3] Plaintiffs would still be entitled to the protection of the two-year discovery rule. Indeed, until December 2003, Plaintiffs had little reason to believe that Tassinari had defrauded them of their entire investment - the vast majority had been returned. Plaintiffs were only placed on notice of the fraud when they were sued by BHI and Zangara. Because they commenced the action within two years of the date when they reasonably should have discovered the fraud, the action is timely.

B. Contribution

Plaintiffs' claim for contribution is clearly timely. The three-year statute of limitations for this claim began to run in June 2005, when Plaintiffs paid BHI and Zangara $225,000.00 to satisfy the state court judgment.

C. Unjust Enrichment & Monies Had & Received

The statute of limitations with respect to Plaintiffs' unjust enrichment and monies had and received claims should, at a minimum, be equitably tolled for the period between January 1998

---

[3] Arguably, Plaintiffs' fraud and breach of fiduciary duty claims accrued in June 27, 2005, when they paid $225,000.00 to satisfy BHI and Zangara's judgment. It was only at this time that Plaintiffs were truly harmed by Tassinari's fraud.

11

and December 2003.[4] During this time, Tassinari's actions led Plaintiffs to believe that (at least as with respect to the $232,000 that was returned), there was no claim for unjust enrichment or monies had and received. Excluding this time from the six-year limitations period calculation, Plaintiffs' claims were timely filed.

D. Conversion

Finally, at this juncture, the Court declines to dismiss Plaintiffs' claim for conversion. Assuming the facts in a light most favorable to Plaintiffs, there was no indication that Tassinari proposed to "ignore the[ir] rights and assert his own claim to the property," Davis, 2001 WL 1645916, at *2, until December 2003.

CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
August 28, 2006

---

[4] Arguably, Defendants' continued excuses concerning the status of Plaintiffs' investment would support equitable tolling at an earlier date.